Good morning. Please be seated. We'll begin with the first case on calendar, Geer v. Employee Health Referral Systems. Good morning, Your Honors, and may it please the Court, my name is Earl Hall and I represent Appellant Wesley Geer. Appellant respectfully brings two issues before this Honorable Court. First, was licensed clinical social worker Joseph D. Maria, owner of Employee Health Referral Systems, entitled to absolute immunity when he testified against his Employee Assistance Program client, Wesley Geer, a tenured teacher of social studies recognized for his excellence in teaching by local, state, and federal government authorities at a 3028 discharge hearing. And, if not, was the Court below's denial of Mr. Geer's motion to amend based on a mistake of law and an abuse of discretion. On July 25, 2018, U.S. District Court held that all claims against LCSW D. Maria and his wholly owned subsidiary, Employee Health Referral Services, were dismissed. Based solely on the courts below holding that, and I quote, D. Maria's testimony was sufficiently akin to that given by a witness in a judicial proceeding to render him absolutely immune from liability for his testimony. Is there any objection to D. Maria testifying at the hearing? There was not, Your Honor. Was there any objection to any of the questions that were asked or the answers that were given by him? There were not, Your Honor. Does that have any bearing on what we do here? I don't believe so, Your Honor, because the burden was on the appellee to quash the subpoena if the subpoena was in fact valid. And we contend that it wasn't valid because it was not accompanied by an employee waiver as required by the CPLR. But aren't you challenging what D. Maria actually testified, not the fact he was there, at this point at least? I am testifying to both, Your Honor. And the reason for that is that the bond between a social worker, a therapist, and his client was set forth in Jaffe v. Redmond by the U.S. Supreme Court. They talked about the necessity of having to have a trusting, confidential relationship in order for therapy to have any possibility of success. By testifying against his client, D. Maria completely abrogated that confidence. He destroyed it. And the boundaries of that confidentiality, despite the arguments of my colleagues, is set forth in case law in the State of New York. For example, just telling of a client's name is a breach of that confidentiality. And I would refer the Court to Gendel v. Belay. He did testify by subpoena. It's not like he ran in to blurt out everybody's secrets. He did, Your Honor, but he did not attempt to quash the subpoena. And we argue that the subpoena in and of itself does not abrogate the fiduciary duty of confidentiality. Did your client move to quash the subpoena? He didn't even know about the subpoena, Your Honor, until he was at the hearing. But, I mean, at the hearing, did he object to the testimony? His attorney did not object to the testimony, Your Honor, but that was for several reasons. First of all, he learned. That was what? That was for several reasons. First of all, at the hearing, he learned that all the information that was going to be testified to had already been given to co-defendant Gates Child Light School District in 2014, which was within the statute of limitations period, which is another issue. But Dean Maria, who ran a confidential employee assistance program, met with the school district, and he told the school district about concerns that his coworkers had about his medication, about their assessment of his condition. So all that information was already out of the bag. I have a different question for you, which is, even assuming that you are right in the arguments that you're making here, what is the source of liability? What is it that makes what the defendant did actionable towards your client? Where does your client's right of action come from? He has a fiduciary duty as recognized in common law. And I would respectfully cite Harley v. Drzuba, a Third Department case. In that case, the court, the Third Department said that they recognized confidentiality by a social worker as a tort sounding professional malpractice. That's one source, Your Honor. Also, and the case isn't very clear, in Lightman v. Flom, Section 4508 is referenced and compared to Section 4503. And in that case, the court recognizes the difference between the learned professions and it specifically notes that a social worker is one of the learned professions and a cleric, which they held did not have a right to confidentiality. Now, was the circumstance that the court dealt with in Harley a circumstance like this one? No. Or was the defendant in that case a treating doctor of the plaintiff? No. In that case, Your Honor, the plaintiff was a cleric, a minister. And the court distinguished between a minister, which they said was not one of the learned professions, and other professions under the CPLR, social workers, doctors, attorneys, who were members of the learned profession. And they set out their requirements for a learned profession in that opinion. So clearly they distinguished between a cleric who had no duty of confidentiality and the learned professions, which did. But even if we were to assume, and the case is not clear, whether or not a fiduciary duty arises from 4508 or it just codifies the common law, the fact is the common law is clear. A breach of fiduciary confidentiality by a social worker is actionable as a tort. And the case law, again, starting with my question is, one of my questions is, do you have law that supports the proposition that there was a duty of confidentiality arising out of this kind of a relationship as opposed to a relationship where someone goes to a doctor or a psychiatrist for medical? Yes, Your Honor. Because? Again, respectfully, I would refer the court to several decisions. Okay. Harley v. Drzuba, 169-82nd-1001. That was the one you just told us. That's the one I told you. And clearly in that case, a social worker was found to be — have a fiduciary duty to his client, which would manifest in a tort if breached. But beyond that, in a more refined analysis, the courts in New York have held that a social worker who divulges a name — and again, in Jaffe v. Redmond, the Supreme Court has held that there is a time difference between a psychologist, psychiatrist, and a social worker. The court said to make that distinction would be meaningless and would harm the well-being of patients. So for cases that refer to psychologists and psychiatrists and social workers, the case law should remain the same. Could I just ask you a question about the statement of understanding that your client signed? Yes, Your Honor. It says that disclosures that do not require consent, is that A-121, says judicial, administrative, or criminal prosecutions. What am I missing? Because, Your Honor, in that — two things. In that situation, it talks about prosecutions, and this was not a prosecution. Well, it says criminal prosecutions, but it says judicial, comma, administrative, comma, or criminal prosecutions. There's no such thing as an administrative prosecution. Right. And because of that, Your Honor, my client was confused at the outset of this — of this intervention. So he went to the — to both the assistant superintendent of schools and he went to Mr. DiMaria, LCSW DiMaria himself, and he asked them, there are things about the HIPAA release and your confidentiality provisions that I don't understand. And he listed those things. And he was told, both by assistant superintendent Brondin and by LCSW DiMaria, that without his consent, nothing except whether he was going to — whether he was attending sessions as scheduled or whether he was complying with the recommendations would or could be disclosed. That's in an affidavit that was before the Court, and it constitutes a matter of fact, not a matter of law for the district court to have judged. He clearly was told that the ambiguous documents that were put before him did not allow LCSW DiMaria to share any information, either from him or from his coworkers, with the school district. And yet that's exactly what LCSW DiMaria did. And again, respectfully, that's a matter of fact for the jury, not a matter of law for the court. You've reserved three minutes for rebuttal. We'll hear you then. Thank you. Good morning. Good morning. May it please the Court. My name is Jillian Farrar. I'm the attorney for Appellee's Joseph DiMaria and Employee Health Referral Services. I'm going to refer to them as EHS today. This really comes down to a matter of absolute immunity arising out of testimony at a quasi-judicial hearing. Well, but that doesn't answer, does it, the aspect of the case that deals with your client's delivery of information prior to his testimony? Isn't that part of the complaint? Well, the delivery of the report in 2014 by Mr. DiMaria was specifically authorized in the authorization signed by Mr. Gere in February of 2014. It allowed Mr. DiMaria to communicate with the school district and Mr. Brondin aspects of the employee assistance program. It allowed Mr. DiMaria to divulge such things as even his diagnosis of Mr. Gere, something that was never divulged. So there are multiple layers of issues going on. There is, first, this idea of absolute immunity for the testimony that Mr. DiMaria gave at the 3020A hearing. And the recent Court of Appeals decision in Stega affirms that witnesses at a 3020A hearing are immune from suit arising from that testimony. Second, if you look at the transcript of Mr. DiMaria's testimony, there was absolutely no disclosure of confidential information of Mr. Gere's. And then if you even look at the report, which was disclosed by Mr. DiMaria to the school district in 2014, that also did not include any of Mr. Gere's confidential information. It included concerns of Mr. Gere's co-workers, which is not confidential information of Mr. Gere. It included recommendations that Mr. DiMaria was going to, was making with respect to. If it had included, if we were to disagree with you on the last point that you were making and we considered some of what was disclosed to be confidential information, information that would be confidential if legal confidentiality applies here, do you agree with the plaintiff's proposition that it would be illegal for the defendant to disclose that information, actionable under law? It would, Mr. Gere had authorized Mr. DiMaria to disclose that information to the school district. And so then when the 3020A hearing came about, that information was already on the record and in the record as plaintiff's, or I'm sorry, as the school district's Exhibit 8 before Mr. DiMaria even testified as a subpoenaed witness. So, excuse me. Going back. Can I just ask a follow-up question? So you're saying then that, Joseph, I'll ask you about what about disclosing the report before the hearing that might not be protected by absolute witness immunity. But you say because of the release that he signed that even if he had some kind of privilege in the social worker, it wouldn't apply. Is that what your answer was? Well, so my answer is that, you know, Mr. DiMaria was Mr. Gere's social worker. Mr. Gere had a privilege that he could have asserted with respect to Mr. Gere. He authorized Mr. Gere to give certain information to the school district, which Mr. DiMaria did in connection with his actions as the provider of the EAP services. Then going forward, at the 3020A hearing, Mr. Gere at no time asserted his privilege. Privilege is the right of the client to enforce, and it must be enforced, otherwise it's waived. Mr. Gere's attorney, he was represented by counsel. Mr. DiMaria wasn't at the 3020A hearing. Mr. Gere did not, his attorney did not move to quash the subpoena. He did not object to Mr. DiMaria's testimony. He did not ask any questions of Mr. DiMaria, and he didn't ask that the ALJ strike Mr. DiMaria's testimony because of the privilege. And I think that the idea behind that is that what Mr. DiMaria said was ultimately helpful for Mr. Gere. And I believe that it was Mr. Gere's attorney who likely waived the privilege knowingly, knowing that Mr. DiMaria's testimony would have been helpful. You said that Mr. DiMaria did testify as to recommendations he made. What were they? Those recommendations were that if there were any additional confrontations or issues with Mr. Gere, that those be documented and addressed with Mr. Gere immediately. It was not treatment recommendations or anything like that. I'd like to address quickly the issue of the statute of limitations with respect to the claim for fraudulent misrepresentation. The First Amendment complaint did not include any allegations with respect to actions by Mr. DiMaria prior to that 3020A hearing. In that respect, Mr. DiMaria, his counsel, we had absolutely no idea that a plaintiff was going to be reaching back to 2014 to try to put Mr. DiMaria's counseling at issue at that time. In which case, the relation back period for the statute of limitations purposes wouldn't apply. And so the three-year statute which ran between the filing of the First Amendment complaint and the proposed Second Amendment complaint we believe precludes. Do you still maintain your argument that there's no supplemental jurisdiction over the fraud claim? I do believe that there is a jurisdictional issue. All of Mr. Gere's issues arise at our state law claims, and they are wholly separate from any discrimination that he would have faced by Mr. or by the school district. There are two parallel courses. Why were they so separate? Well, any His fraud was that I was lied to about my disclosure agreements, right? It's not the basis of his fraud. The permissions he signed, the authorizations he signed were misrepresented to him by DiMaria. Isn't that his basic claim? Yes, that's his claim. But that is wholly separate from the ADA claims that he's asserting against the school district. The PTSD-based claims? Yes, those all predated and are wholly separate from what Mr. DiMaria engaged in with plaintiff. If we look for a minute at the alleged disclosure of confidential information at the 3020A hearing, Mr. DiMaria's testimony, as transcribed and prepared and sent in the record by plaintiff, creates and the fact that the plaintiff has not at all objected to the accuracy of the transcription and actually put the transcription in the record makes any disclosures which would have taken place a matter of law for the court to decide and not a matter of fact because it can be read in the fact that there are no disclosures is available. So to summarize, Mr. DiMaria was a subpoenaed witness at a 3020A hearing and a witness in a quasi-judicial proceeding is absolutely immune from suit from any claims arising out of that proceeding. Mr. Gere waived any privilege that he had with respect to the social worker privilege by failing to raise that privilege at the hearing and by signing the authorization to allow Mr. DiMaria to disclose the information to the school district. And with that, I have nothing further for the court. Thank you. We'll hear rebuttal. Your Honor, first I'd like to address the issue of relation back. I think a clear reading of the first complaint demonstrates that all the facts necessary to put defendants on notice of the professional malpractice claim are clearly set forth in the original complaint. I won't waste my time going through each of those for the court to review. Secondly, with respect to assessment, it was LCSW DiMaria himself in his transcript who several times referred to his assessment, use that word, in the transcript. His assessment was that he did testing on my client and he found no basis for a mental health issue. That clearly cuts against the interests of my client. My client is saying that he was discharged in violation of the Americans with Disabilities Act because he was disabled. And now he's got his confidential counselor who said he did assessments of him and there's nothing wrong with him. So clearly he did violate that. Similarly, with respect to things that he actually said that were not in my client's interest, my client asked him, if you talk to my coworkers, will that be confidential? He was told this was part of the overall intervention and it was confidential. That's a matter of fact, Your Honors. And in that light, here's what DiMaria did. Here's how he supported the contention of the district for terminating my client because they said that he was, his professional mannerisms were intimidating to others. He said, and I quote, there were concerns about either some of his classroom activities, their relationships with him, and an incident which occurred in the previous year, June of 13. Transcript 504814. DiMaria testified that his coworkers, quote, felt intimidated, threatened in a sense. Transcript 50521-25. DiMaria testified that the coworkers were afraid that he would retaliate against them if he were allowed to return to work. Transcript 509, Headlines 3-17. DiMaria testified that the coworkers should be told to encourage the staff to report violations of work rules, better protocol for documentations, employee performance, which include behavior, attitude, and mood. So those are the things that he said that clearly supported the theory of discharge of the district. Those are the things he got from his confidential employee assistance program intervention. He swore, he said to my client, it's confidential, whether I get it from your coworkers or you, it's all part of the confidential EAP program. With respect to the types of information that were confidential, if your honors would refer to EHS's own document, they talk about even a name as being confidential private information, protected health information. The courts, again, have ruled that the client's name is protected, and the reasoning of the court was that there was a stigma that attaches to mental health services. That's exactly what co-defendant Gates Child I wanted to put before the arbitrator. The number of sessions, he testified to that. The fact that he was on medication, he testified to that. So he built their case that this was unstable. Thank you. I have 30 seconds. Just one other thing. With respect to the absolute immunity, if the court were to accept that, then any privilege, whether it be for an attorney, for a physician, for a social worker, would be abrogated. No, you made that argument. Thank you. Thank you both. We'll reserve decision at this time.